UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ANDREW J. PHILLIPS-ADDIS,

                Plaintiff,

v.

NOAH BOTTRELL et al.,

                Defendants.

_____/

Case No. 1:20-cv-620

Honorable Janet T. Neff

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants MacEachern, Weller, and Parish.  The Court will also dismiss, for failure to state a claim, Plaintiff's claim against Defendants Bottrell, Ward, and Best for interference with access to the courts.  Plaintiff's claims against Defendant Bottrell, Ward, and Best for First Amendment retaliation and Plaintiff's claim against Defendant Best for use of excessive force in violation of the Eighth Amendment remain.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues ECF Correctional Officers Noah Bottrell, Unknown Best, and D. Weller; ECF Sergeant Unknown Ward; ECF Warden Les Parish; and Director Ken MacEachern.

During the last fourteen months, Plaintiff has filed eight civil actions in this Court, four habeas petitions and four civil rights actions.  With the exception of Plaintiff's first habeas petition, there is substantial overlap in the facts underlying each of Plaintiff's petitions and complaints.  Each of Plaintiff's cases bears some relationship to this one; therefore, the Court will provide some information regarding each case.

Plaintiff filed his initial habeas petition on October 24, 2019.  *Phillips-Addis v. Parish*, No. 1:19-cv-905 (W.D. Mich.) (herein *Phillips-Addis Habeas I*).  The Court described the facts relating to that petition as follows:

> Petitioner pleaded guilty in the Delta County Circuit Court to assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84.  On November 6, 2017, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to a prison term of 8 to 20 years.
>
> *              *              *
>
> On July 27, 2017, Petitioner was housed in the Delta County Jail.  The victim, Nathan Gartland, was housed there as well.  Gartland was laying on his back on seats by a table.  Petitioner walked over to him with a towel, placed the towel around Gartland's neck, pulled Garland to the ground, and dragged Gartland by the towel to the door.  The incident was captured on camera.  Petitioner acknowledged at his plea hearing that he "wrapped a towel around Nathan Gartland's neck, tried to kill him."  (*Id.*, PageID.82.)
>
> Petitioner entered a *nolo contendere* plea to the charge.  But, after he entered his plea and before he was sentenced, he claimed that he and Gartland staged the entire

assault.  Petitioner staged the assault to avoid extradition to Wisconsin.  The staged assault "was to force the state of Michigan justice system [to] stop [Petitioner from] going back to Wisconsin state prison system."  (Am. Pet., ECF No. 3, PageID.35.) The entire "crime" was "actually [a] fraud on Michigan state and Wisconsin States justice system."  (*Id*.)  The goal was to "force[] Delta County [to] make him . . . stay in the state of Michigan."  (*Id*.)

After Petitioner's plea, however, he disclosed the plot to the court and prosecutor by way of a letter.  Petitioner's disclosures in the letter forced the court, the prosecutor, and Petitioner's counsel, to reconsider further proceedings in the case. The prosecutor "gave [Petitioner] a chance to withdraw the false case and . . . drop [the] false charges, but then [Petitioner would . . .  lose his discharge from [the] Wisconsin case . . . ."  (*Id*., PageID.39.)  Petitioner could not abide that result because his "life was at risk in Wisconsin state [prison] system, due [to] gang [problems.]"  (*Id*.)

Petitioner's counsel knew that Petitioner was hoping to get at least a five-year sentence in Michigan because Petitioner felt that with a sentence that long, Wisconsin would drop its hold on him.  (*Id*., PageID.57, 67.)  After Petitioner disclosed the fraud, he informed his counsel that he wanted to go forward with sentencing anyway.  (*Id*., PageID.65-66.)  In Petitioner's letter(s) to the court and prosecutor, he disclosed additional crimes, in addition to the fraud he had perpetrated on the court.  (*Id*., PageID.68-70.)  Counsel advised Petitioner that, should Petitioner withdraw his plea in the pending case, he might face a potential life sentence because of his criminal history; and, in addition, he might face prosecution for perjury.  (*Id*.)

Counsel offered to withdraw . . . Counsel acknowledged that he had seen the video recording of the assault; but, he did not review it after Petitioner disclosed the concoction or interview Gartland to confirm Petitioner's story.  (*Id*., PageID.72-76.)  Because counsel believed Petitioner wanted to go forward with sentencing— and Petitioner's representations in his habeas submissions support that belief— Petitioner went forward with the sentencing.  But, "after sentencing was done and Wisconsin started [their] end of letting [Petitioner be] discharged . . . [, Petitioner] wanted to back out [of] the state of Michigan deals . . . ."  (*Id*.)  Indeed, he hoped to "gain money out [of] the dealings of the fraud."  (*Id*.)  He secured the appointment of appellate counsel.

Appellate counsel moved to withdraw Petitioner's plea.  The trial court held a hearing, and rejected Petitioner's claim.  The court ruled that the plea proceeding itself was error free.  (*Id*., PageID.93.)  Counsel had done nothing wrong up to and including the plea proceeding.  (*Id*.)  The trial court found further "that [Petitioner's counsel's] performance was at or above an objective standard of reasonableness under prevailing professional norms and there [was] no reasonable probability that an error was committed for the Court to conclude that the results of the proceedings would have been different."  (*Id*., PageID.94.)

*Phillips-Addis Habeas I* (Op., ECF No. 7, PageID.188-190.)[1]

Plaintiff filed his second habeas petition on May 11, 2020.  *Phillips-Addis v. Whitmer*, No. 1:20-cv-443 (W.D. Mich.) (*Phillips-Addis Habeas II*).  That petition was not related to the constitutionality of his conviction.  Instead, he complained that he—and other prisoners— were being tested for COVID-19 without their consent.  The undersigned determined that Plaintiff challenged only the conditions of his confinement and that his claims "'f[e]ll outside the cognizable core of habeas corpus relief.'"  *Phillips-Addis Habeas II* (Op., ECF No. 4, PageID.17.) The petition was dismissed without prejudice on June 2, 2020.

Plaintiff responded by filing the instant civil rights complaint on July 6, 2020. *Phillips-Addis v. Bottrell et al.*, No. 1:20-cv-620 (W.D. Mich.) (*Phillips-Addis Civil Rights I*). Plaintiff's complaint is difficult to follow.  It purports to be a "registration of [a] judgment to form a lien action."  *Phillips-Addis Civil Rights I* (Compl., ECF No. 1, PageID.1.)  That, in turn, appears to follow from an order of this Court dated December 16, 2019.  (Order, ECF No. 1-2, PageID.30.) By way of that order, the Court rejected a series of difficult-to-decipher documents that appeared to be attempts at lien enforcement.  The Court noted the steps Plaintiff should take if, indeed, he were attempting to register a judgment to enforce a lien.  Plaintiff took that as a direction from the Court to file an action to register a judgment.  As far as the Court can determine from Plaintiff's voluminous pleadings in his eight actions in this Court, however, Plaintiff has not obtained a judgment against any person or entity in any court that might be registered for enforcement in this Court.

Three days after he filed his civil rights complaint, Plaintiff filed his third habeas petition.  *Phillips-Addis v. Parish et al.*, No. 1:20-cv-631 (W.D. Mich.) (*Phillips-Addis Habeas*

---

[1] The Court determined that Plaintiff's initial habeas petition lacked merit and, on January 14, 2020, dismissed it on preliminary review.

*III*).  The "petition" names several Respondents, including Les Parish, Noah Bottrell, and Sergeant Ward.  It includes many of the same factual allegations as the instant complaint.  Some of the allegations in the instant complaint are understandable only because of documents Plaintiff attached to this habeas petition.  *See, e.g., Phillips-Addis Habeas III*, (July 1, 2020, Jpay Correspondence, ECF No. 1-4, PageID.31.)  By order entered July 28, 2020, the Court transferred the petition to the Sixth Circuit Court of Appeals because it was second or successive.

Six days after Plaintiff filed his third habeas petition, he filed his fourth.  *Phillips-Addis v. Bottrell et al.*, No. 1:20-cv-661 (W.D. Mich.) (*Phillips-Addis Habeas IV*).  The fourth petition names as Respondents Sergeant Ward as well as Correctional Officers Bottrell and Best.  It includes many of the same factual allegations that are part of Plaintiff's first civil rights complaint.  By order entered July 27, 2020, the Court transferred the petition to the Sixth Circuit Court of Appeals because it was second or successive.

Plaintiff waited one week after filing his fourth habeas action before filing his next civil rights action.  On July 22, 2020, he filed a new civil rights complaint.  *Phillips-Addis v. Haske et al.*, No. 1:20-cv-686 (W.D. Mich.) (*Phillips-Addis Civil Rights II*).  This complaint echoes all of the allegations in *Phillips-Addis Civil Rights I*, then it adds several new Defendants: ECF Assistant Deputy Wardens Michael Haske, Jeffrey Clouse, and J. Spencley; ECF Resident Unit Manager (RUM) R. McCary; ECF Assistant Resident Unit Supervisor K. Johnson; ECF Administrative Assistant Jason Mucha; and MDOC Director Heidi Washington.  *Phillips-Addis Civil Rights II* also includes two Defendants who had been added to *Phillips-Addis Civil Rights I* by way of amendment and supplementation: Correctional Officer D. Weller and MDOC Internal Affairs Director Kenneth Maceachern.  Finally, *Phillips-Addis Civil Rights II* includes the four original Defendants from *Phillips-Addis Civil Rights I*: Bottrell, Best, Ward, and Parish.

When Plaintiff became aware that he was required to pay a second filing fee for *Phillips-Addis Civil Rights II,* he argued to the Court by way of motions, letters, and supplements, *Phillips-Addis Civil Rights II* (ECF Nos. 4, 7, 8, 9, 10, 11, 12, 13, and 14), that he never intended to file a new case, but instead intended to file the new complaint as a supplement to his first civil rights case.  The Court rejected that claim:

> "A civil action is commenced by filing a complaint with the Court."  Fed. R. Civ. P. 3.  A complaint, in turn, must include a statement of the court's jurisdiction, a short and plain statement of the claim, and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  Plaintiff's complaint here satisfies all the requirements of Rule 8.  He alleges that Defendants violated his constitutional rights and he demands relief.  Moreover, Plaintiff's complaint is specifically missing an item that would be required if Plaintiff, in fact, intended to file the complaint in *Phillips[-Addis Civil Rights] I*:  a case number.  Fed. R. Civ. P. 10(a).  Plaintiff's claims would carry significantly more weight if he had used the *Phillips I* case number in the caption when he filed this case—*Phillips II*—or *Phillips III* or *Phillips IV.*
>
> Instead, each document the Clerk docketed as a separate complaint names different parties, raises different but sometimes overlapping claims, and makes separate demands for relief.  None of the more recent complaints is designated as an amendment and Plaintiff did not seek leave to amend before filing them.  Certainly, under Federal Rule of Civil Procedure 15, a party is permitted to amend his pleadings once as a matter of course; but, Plaintiff used that privilege the day after he filed his complaint.  *Phillips I* (Plaintiff's First Supplement, ECF No. 4.)  Indeed, Plaintiff has filed several supplements in *Phillips I* without permission since.
>
> In short, Plaintiff's complaint in this case bears absolutely none of the hallmarks of the type of pleading he claims to have intended.  The Court liberally and properly construed the document to be a new complaint.

*Phillips-Addis Civil Rights II* (Order, ECF No. 15, PageID.142.)  The case remains pending.

The day after Plaintiff filed *Phillips-Addis Civil Rights II,* he filed a new complaint. *Phillips-Addis v. Ward et al.*, No. 1:20-cv-699 (W.D. Mich.) (*Phillips-Addis Civil Rights III*).  The new complaint again names Sergeant Ward as a Defendant and repeats many, if not all, of the allegations Plaintiff raised against Ward in *Phillips-Addis Civil Rights I* and *Phillips-Addis Civil Rights II.*  Plaintiff also introduces a new group of Defendants—participants in Plaintiff's criminal prosecution—Judge John B. Economopoulos, Assistant Prosecutor Lauren M. Wickman, Chief

Prosecutor Philip L. Strom, Magistrate Judge Steven C. Parks, and Delta County Clerk of Court Brenda J. LaCount.

Upon learning that he would have to pay a filing fee in his third civil rights action, Plaintiff again sought to convince the Court that, in fact, his newest complaint was simply an amendment of his first civil rights complaint.  For the same reasons the Court rejected that argument in *Phillips-Addis Civil Rights II*, the Court rejected the argument in *Phillips-Addis Civil Rights III*.  *Phillips-Addis Civil Rights III* (Order, ECF No. 10.)  The case remains pending.

Three days after Plaintiff filed *Phillips-Addis Civil Rights III*, he filed a new complaint.  *Phillips-Addis v. MacEachern et al.*, No. 1:20-cv-710 (W.D. Mich.) (*Phillips-Addis Civil Rights IV*).  The new complaint did not introduce any new Defendants.  It included MacEachern, Parish, Ward, Best, and Bottrell from *Phillips-Addis Civil Rights I* and *Phillips-Addis Civil Rights II*.  It also included Defendant Haske from *Phillips-Addis Civil Rights II*.

The Court concluded that Plaintiff's allegations in *Phillips-Addis Civil Rights IV* almost completely overlapped Plaintiff's allegations in *Phillips-Addis Civil Rights II*.  With regard to the areas of overlap, the Court concluded Plaintiff's claims were duplicative and frivolous.  Plaintiff's new suit expanded his prior allegations in only one respect—the allegations were extended by one day to July 23, 2020.  The Court concluded that Plaintiff's allegations regarding the events of that day failed to state a claim.  Accordingly, the Court dismissed *Phillips-Addis Civil Rights IV* because it was frivolous and/or failed to state a claim.

This Court has described Plaintiff's submissions as "rambling" and "muddled" *Phillips-Addis Habeas I* (Op., ECF No. 7, PageID.188, 202); *Phillips-Addis Habeas II* (Op., ECF No. 4, PageID.16); *Phillips-Addis Habeas III* (Order, ECF No. 3, PageID.46); *Phillips-Addis Habeas IV* (Order, ECF No. 3, PageID.23); and an "unintelligible . . . mish-mash of conclusions,

legal gibberish, and scattered factual averments," *Phillips-Addis Civil Rights IV* (Op., ECF No. 4,

PageID.44).   Plaintiff reports that he has a learning disability and some difficulty in reading and

writing.   Plaintiff has submitted more than fifty separate pleadings, motions, supplements, and

letters in this case alone, each comprised of many handwritten, repetitive, and confusing pages.

The Court also notes that Plaintiff takes fundamentally inconsistent stances in his

various cases.   As an example, in this action, Exhibit H states: "this how I settle out and sat in seg.

cause staff planted bomb in my legal mail."   (Exh. H, ECF No. 1-1, PageID.27.)   Here, Plaintiff

suggests that he was framed for planting a bomb in his legal mail.   In a document filed in *Phillips-*

*Addis Habeas I*, however, Plaintiff stated the following:

> I personally mailed a live bomb out Oak's Correctional Facility on 12-12-19.   I
> have full intent to kill all head controling official I promise to do so.   I have attacked
> many all place's as I decaire to you today I am an active terrerrism upon your office
> next.   This is a promise and demand.   I'll never stop.   Remove me now.
>
> I sent a bomb out Oak's correctional on 12-12-19.   Fact. I contains 2-voided place's
> inside paper work 1st battery part on top wire ran down to bottom to black powder
> on 2nd void.   The intent is to kill U.S. Attorney General.   I'll not stop until removed.

*Phillips-Addis Habeas I* (ECF No. 6, PageID.173 (verbatim).)

Against that backdrop, the Court will review the allegations in Plaintiff's initial

complaint and those amendments and supplements that are properly before the Court.

The core allegation in Plaintiff's complaint is that Defendant Noah Bottrell is

harassing him.   Plaintiff alleges that he filed a grievance against Bottrell and, thereafter, Bottrell

began to search Plaintiff's cell daily.   Plaintiff also reports that Bottrell attempted to plant a knife

in Plaintiff's cell and implicitly threatened harm to Plaintiff if he left his cell.   Plaintiff also claims

that Bottrell wrote false misconduct reports on Plaintiff.

Plaintiff did not take the harassment lying down.   He wrote to an organization called

Humanity for Prisoners.   He reports that the organization did a "Freedom of Information Act"

request and got Bottrell's first name and badge number.  Armed with that information, Plaintiff commenced an action in the Michigan Court of Claims.

Plaintiff claims that following his communication with the court of claims, Defendant Ward blocked Plaintiff's legal mail.  It is difficult to accept Plaintiff's allegation as true. During the same period of time he claims that Defendant Ward blocked Plaintiff's legal mail, Plaintiff filed six of the actions referenced above including dozens and dozens of separate filings in this action alone.  Moreover, Plaintiff succeeded in making multiple filings with the state court of claims.

It is possible that Plaintiff is specifically referring to Defendant Ward's enforcement of a "stop mail" order obtained on behalf of Assistant Prosecutor Lauren Wickman of Delta County.  That order figures prominently in many of Plaintiff's habeas and civil rights cases.  Plaintiff attaches a copy of the "Notice of Intent" to his complaint.  The document indicates that Plaintiff agreed to not contact Wickman by mail, phone, or third party.  (NOI, ECF No. 1-1, PageID.26.)

Plaintiff also claims that Sergeant Ward wrote a false misconduct against Plaintiff. Plaintiff reports that Defendant Best also threatened Plaintiff and wrote a false misconduct against Plaintiff.  In addition, Plaintiff reports that Best put Plaintiff in a choke hold and screamed at him.

Plaintiff claims Defendant Parish is responsible for allowing the actions of Bottrell, Best, and Ward.  There are no allegations in the initial complaint against MDOC Internal Affairs Director Ken MacEachern.  Similarly, there are no allegations in the complaint against Corrections Officer Weller.

The names of MacEachern and Weller show up for the first time in a supplement/amendment filed by Plaintiff on July 17, 2020.  That document is one of many filed

by Plaintiff that purport to supplement or amend his complaint allegations.[2]  The document, however, does not make any allegations of wrongful conduct on the part of Defendant MacEachern.  Plaintiff only states that ECF Assistant Deputy Warden Spencley told Plaintiff to serve his motion to register judgment on MacEachern.  (Supplement, ECF No. 6, PageID.53.)

Plaintiff provides even less information regarding the role of Defendant Weller.  He asks the Court to order MDOC internal affairs—presumably MacEachern—to investigate Bottrell, Ward, Best, and Weller; but Plaintiff does not say what Weller has done or failed to do.

## II.    Amendments and supplementation

Federal Rule of Civil Procedure 15 permits a party to amend a pleading once as a matter of course.  Thereafter, a party may only amend or supplement a pleading with the opposing party's written consent or leave of court.  The Court accepts Plaintiff's amendment/supplement filed on July 17, 2020, (ECF No. 6) as the sole amendment or supplementation to which Plaintiff is entitled as a matter of course.  All of the subsequent amendments or supplements, including ECF Nos. 9 (including exhibits), 10, 16, 17, 20, 22, 23, 31, 33, 34, 35, 37, 40, 43, 45, 48, 49-1, 50, 53, 56, and 57, have been filed without permission of the Court and, with the exception of Plaintiff's motion(s) to add Defendants, without even requesting that permission.

Where Plaintiff has simply chosen to file amended and supplemental pleadings without seeking leave of Court, the Court will simply disregard those pleadings if they purport to add allegations in support of his complaint.  Nevertheless, the Court will consider the documents

---

[2] It is noteworthy that Plaintiff was able to indicate on his many "supplements" the case number of this action, thereby making clear that he intended to file the document in this action. Plaintiff's ability to so identify the documents he intended to file in this action lends support to the Court's conclusions in *Phillips-Addis Civil Rights II* and *Phillips-Addis Civil Rights III* that where Plaintiff did not include the case number on his filings he did not intend to include the documents as part of this this case.

to the extent they also seek relief from fees (see § III below), the appointment of counsel (see § IV

below), discovery (see § V below), or immediate relief (see § VI below).

   With regard to Plaintiff's motion to add Defendants, ECF Nos. 20 and 23 and

several subsequent documents that refer back to his request to add Defendants, the Court will

consider Plaintiff's request under Rule 15.   Rule 15 provides that a party may amend its pleadings

by leave of court and that "leave [to amend] shall be freely given when justice so requires."  Fed.

R. Civ. P. 15(a).[3]  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some

circumstances in which "justice" might counsel against granting leave to amend:  "undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc."  *Id.* at 182.  The Court noted that the grant or denial

of the opportunity to amend was discretionary with the district court and that the district court

should provide a justifying reason for its decision.  *Id.*

   In this instance, evaluation of the factors identified in *Foman* is virtually impossible

because Plaintiff has failed to attach to his motion a copy of his proposed amended or supplemental

complaint.   To grant leave to amend without reviewing the proposed amendment would be

inappropriate.  *See, e.g., Beydoun v. Sessions*, 871 F.3d 459, 469-70 (6th Cir. 2017) (recognizing

---

[3] The same standard applies if the proposed change to the complaint adds parties.  Where the proposed amendments seek to add parties, they must also comply with Rule 21.  Motions under Rule 21 must be afforded "the same standard of liberality afforded to motions to amend pleadings under Rule 15."  *Fair Housing Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D. N.Y. 1972); s*ee also Murray v. State Farm Fire & Cas. Co,* 870 F. Supp. 123 (W.D. Va. 1994)*; Northeastern Mining Co. v. Dorothy Coal Sales, Inc.*, 108 F.R.D. 657 (D. Ind. 1985); *Rollins Burdick Hunter of Wisconsin, Inc. v. Lemberger*, 105 F.R.D. 631 (D. Wis. 1985); *Kaminsky v. Abrams*, 41 F.R.D. 168 (S.D. N.Y. 1966); *Chaltry v. Ollie's Idea, Inc.*, No. M-76-26-CA-2, 1980 WL 2078 at *4 (W.D. Mich. Apr. 23, 1980).  Similarly, if the proposed change to the complaint is a supplement instead of an amendment—if it "set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," Fed. R. Civ. P. 15(d)—the same standard applies. Rule 15(d) affords courts the same level of discretion to permit supplements that Rule 15(a) affords to permit amendments.  6A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1504 (3d. ed. Westlaw Aug. 2019 Update).

that, without Plaintiff's proposed amendment, a court cannot determine whether "justice so requires" leave to amend); *Wolgin v. Simon*, 722 F.2d 389, 394-395 (8th Cir. 1983); *Nation v. United States Government*, 512 F. Supp. 121, 124-125 (S.D. Ohio 1981); *Williams v. Wilkerson*, 90 F.R.D. 168 (E.D. Va. 1981).

   Nonetheless, it appears that the addition of these Defendants to this action for the purposes identified in Plaintiff's brief would be futile because it would be duplicative of *Phillips-Addis Civil Rights II*, which names each of the Defendants Plaintiff seeks to add here, and named them more than three weeks before Plaintiff moved to amend his complaint in this case.  Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants."  *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977).  Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. California Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953-54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997).  The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and protect parties from "the vexation of concurrent litigation over the same subject matter."  *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

   Moreover, while the presence of the new Defendants in *Phillips-Addis Civil Rights II* is supported by factual allegations involving those Defendants, Plaintiff has not made any factual allegations here that demonstrate that the new Defendants have violated Plaintiff's constitutional

rights.  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The only allegations of active unconstitutional conduct in this case involve Defendants Bottrell, Ward, and Best.  Plaintiff does not allege any conduct by the new Defendants in his motion.  In the supporting brief, he alleges only that the new Defendants failed to fix the problems caused by Bottrell, Ward, and Best.  That does not suffice to state a claim under § 1983.

For all of those reasons, Plaintiff's proposed addition of the new Defendants would be futile.  Accordingly, the Court will deny Plaintiff's motion to add new Defendants. (ECF No. 20.)

Although the Court will not consider Plaintiff's many proposed supplements and amendments on this preliminary review, that does not mean that Plaintiff would not be allowed to supplement or amend his complaint going forward.  Plaintiff is advised, however, that such supplements or amendments will only be considered if Plaintiff moves for leave to file them and provides with the motion his proposed amended or supplemental complaint.  Plaintiff is further advised that "'[a]n amended complaint supersedes an earlier complaint for all purposes.'" *Calhoun v. Bergh*, 763 F.3d 409, 410 (6th Cir. 2014) (citing *In re Refrigerant Compressors Antitrust Litig.*,

731 F.3d 586, 589 (6th Cir. 2013)); *see also Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009).

### III.   **Plaintiff's motions regarding fees and separate cases**

#### A.   *in forma pauperis* **status in this case**

Plaintiff did not initially seek leave to pursue this case as a pauper, but he did not pay the filing fee either.  Accordingly, the Court entered a deficiency order (ECF No. 7) directing Plaintiff to pay the fee or move to proceed *in forma pauperis*.  The Court's direction did not square with Plaintiff's belief that he was pursuing only a motion to register judgment and that he could do that with payment of a filing fee of $47.00, which he had submitted when he filed his complaint.  By affidavit filed August 10, 2020, Plaintiff so informed the Court.  Plaintiff explained that if the Court believed his case was instead a civil rights case, he would promptly pay the fee.  In fact, the balance of the fee was paid on August 4, 2020.  Nonetheless, Plaintiff indicated that he wanted to proceed *in forma pauperis*.  Reviewing all of the materials that Plaintiff has since provided, it is apparent that he has corrected the deficiency: he has filed a request to proceed *in forma pauperis*, an affidavit of indigence, and a certified account statement.  Thus, the Court will address Plaintiff's motion to proceed *in forma pauperis*.

Plaintiff's motion, affidavit, and account statement indicate that he is indigent and entitled to proceed *in forma pauperis* under 28 U.S.C. § 1915.  Typically, the Court would enter an order directing the MDOC to collect and remit funds periodically from Plaintiff's trust account in payment of the filing fee; however, here, Plaintiff has already paid the fee.  As of May 1, 2013, the filing fee for a civil action was increased from $350.00 to $400.00.  However, if the Court grants a *pro se* litigant leave to proceed *in forma pauperis*, the filing fee remains $350.00.  Therefore, Plaintiff's payment of $400.00 is an overpayment of $50.00.  The docket in this case indicates that Plaintiff has paid additional amounts to the Clerk for copies in this case and his other

14

civil rights cases.  To the extent Plaintiff does not owe the Court other fees and costs in this case or his other cases, the Court will direct the Clerk to refund the $50.00 overpayment to Plaintiff.

After the Court completes its review of the case, the Court will determine whether dismissal or service of process is appropriate, and will fashion an order accordingly.  Should the case be dismissed, voluntarily by Plaintiff or by the Court, Plaintiff shall remain responsible for the filing fee. *McGore*, 114 F.3d at 607.  Any pleadings herein served by the United States Marshal shall be at the expense of the United States government.  All costs shall be reimbursed to the United States should Plaintiff prevail.

Once service of process has been ordered, Plaintiff shall serve upon Defendants, or if an appearance has been entered by an attorney, upon the attorney, a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date a true and correct copy of any document was mailed to Defendant or the attorney.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.  Further, Plaintiff shall promptly notify the Court of any change in address.  Failure to do so may result in the dismissal of the action for lack of prosecution.

### B.        Plaintiff's contention that he only intended to file one case

Plaintiff raises here the same concerns he raised in *Phillips-Addis Civil Rights II* and *Phillips-Addis Civil Rights III* regarding his intention to file only one lawsuit.  See (ECF Nos. 19, 21, 24, 32, 33, 34, 35, 36, 38, 39, 41, 42, 46, 47, 48, 49, 51, 52, and 53.)  The judges in *Phillips-Addis Civil Rights II* and *Phillips Addis Civil Rights III* have concluded that the Clerk properly docketed the complaints filed as new actions.  The undersigned concurs.  Any request to dismiss those separate actions and/or to consolidate those actions with this one will be denied.

**C.       Plaintiff's complaints regarding the collection of fees in other cases**

Plaintiff asks the Court to order the MDOC to stop collecting funds from Plaintiff's trust account and remitting them to the Court for filing fees.  (ECF Nos. 54, 55.)  Plaintiff contends he has paid the filing fees in full.

The Court has not ordered the MDOC to collect and remit funds in this case.  Until today, Plaintiff was not proceeding *in forma pauperis* in this case.  He already paid the filing fee.  Moreover, Plaintiff has, on several occasions, paid the Court sums in addition to the filing fee in anticipation of copy costs because he has repeatedly asked the Clerk to copy filed documents.  The Clerk has specifically asked Plaintiff not to send money in anticipation of copy charges, but to identify the materials he wants copied and then await the Clerk's determination of the appropriate charge before sending money.

Because the MDOC has not collected funds from Plaintiff's account in this case, Plaintiff's motion will be denied.  It appears Plaintiff has filed parallel motions in his other cases.  The judges in those cases can determine the propriety of Plaintiff's request with regard to fees and costs in those cases.

**IV.    Appointment of counsel**

Plaintiff has asked the Court to appoint counsel.  (ECF Nos. 9, 10, 42, 45, 46, 48, 52, and 58.)  Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the

16

complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Plaintiff's submissions to the Court are, at best, confusing and repetitive.  Nonetheless, as set forth fully below, he has succeeded in alleging First Amendment retaliation claims against the three principal Defendants as well as an Eighth Amendment claim against Defendant Best.  Accordingly, Plaintiff's requests for appointment of counsel will be denied.

**V.      Plaintiff's requests for discovery**

Plaintiff has asked the Court to issue subpoenas duces tecum to compel Defendants or proposed Defendants in this action to produce documents (ECF Nos. 25, 26, 27, 28, 29, and 30). Plaintiff's requests regarding discovery are premature and will be denied without prejudice.  No Defendant has been served in this case.  After the parties are given an opportunity for mediation, the complaint (as properly amended and supplemented) is served, and a Defendant enters an appearance, the Court will issue a case management order setting forth the relevant dates and limits for discovery.  Plaintiff can renew his motions as necessary at that time.

**VI.     Plaintiff's requests for immediate relief**

Plaintiff has asked the Court for immediate relief.  (ECF Nos. 1, 4, 6, 10, 11, 12, 16, 21, 34, 40, 43, 45, 50, and 57.)  He has proposed different forms of that relief:  transferring him from ECF; transferring him out from under the harassment of Bottrell, Ward, and Best; removing Bottrell, Ward, and Best from the MDOC; investigating them; and ordering them to stop harassing Plaintiff.

Preliminary injunctive relief is "one of the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust*

*PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *National Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. Sumner Cty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, even if a plaintiff has shown

likelihood of success on the merits. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943-44 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his First Amendment retaliation or Eighth Amendment claims. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. While Plaintiff states that there is a danger of injury because of alleged on-going harassment, his allegations are largely conclusory. Moreover, Plaintiff makes clear that the wrongs he has suffered are compensable by monetary damages.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here.

Accordingly, Plaintiff's requests for immediate injunctive relief will be denied.

19

### VII.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Defendants MacEachern and Weller

Plaintiff makes no reference to Defendants MacEachern or Weller in his complaint. Plaintiff's July 17, 2020, supplement (ECF No. 6) names them, but it does not say anything about what MacEachern and Weller did or did not do in violation of Plaintiff's constitutional rights.   It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Therefore, Plaintiff's complaint, as supplemented, against Defendants MacEachern and Weller will be dismissed.

**B.     Defendant Parish**

Plaintiff makes no specific allegation of active unconstitutional conduct on the part of Warden Parish.  At most, Plaintiff claims that Parish failed to fix the misconduct of Bottrell, Ward, and Best.   As noted above, Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899.  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee*, 199 F.3d at 300.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Parish engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against him.  Therefore Plaintiff's complaint, as supplemented, against Defendant Parish will be dismissed.

**C.     Defendants Bottrell, Ward, and Best**

Plaintiff alleges that Defendants Bottrell, Ward, and Best have retaliated against Plaintiff because Plaintiff filed grievances, thereby violating Plaintiff's First Amendment rights. Plaintiff also indicates that these three Defendants have interfered with Plaintiff's access to this Court by taking Plaintiff's legal documents.  Finally, Plaintiff claims that Defendant Best used excessive force against Plaintiff.

22

### 1.    First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that he engaged in protected conduct when he filed grievances. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Plaintiff identifies harassing behavior by the three Defendants that includes daily cell searches, property confiscation, threats, excessive force, and false misconducts.   The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Under the circumstances as Plaintiff has described them, daily cell searches and confiscation of legal papers may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*.  *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)).  Similarly, the use of excessive force and the risk of additional restrictions that follow from a finding of misconduct can

be sufficiently adverse to support a retaliation claim. *Maben v. Thelen*, 887 F.3d 252, 266-67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")).

Finally, Plaintiff alleges that the adverse action was linked to the protected conduct temporally and that each Defendant indicated to Plaintiff that things would go better if he did not file grievances.   Accordingly, the Court concludes that Plaintiff has adequately alleged First Amendment retaliation claims against Defendants Bottrell, Ward, and Best.

**2.      Access to the courts**

Plaintiff alleges that the adverse action of confiscating his legal papers has interfered with his constitutionally guaranteed access to the courts.   It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).   The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817.   The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.   The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.   In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.   In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a

24

nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.  An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Plaintiff has alleged that Defendants interfered with the habeas and civil rights actions he filed in this Court as well as the actions Plaintiff intended to pursue in the Michigan Court of Claims.  Although Plaintiff contends Defendants have interfered with his right to pursue his habeas and civil rights claims, that interference does not appear to have resulted in dismissal, failure to file a case, or missing a court-imposed deadline.  Indeed, Plaintiff does not allege actual harm to pending litigation.

Further, although Plaintiff's claims are of questionable merit, the Court has concluded that Plaintiff has alleged a viable retaliation claim in the instant action.  Nothing suggests that any Defendant's conduct has impaired Plaintiff's ability to file his action or any of his many subsequent filings in the case. Accordingly, Plaintiff has failed to state a claim for interference with his access to the courts.

### 3.    Excessive force

Plaintiff alleges that Defendant Best used excessive force against Plaintiff on July 5, 2020, twisting Plaintiff's hand to the breaking point and grabbing Plaintiff in a chokehold. (Compl., ECF No. 1-1, PageID.23.)  Plaintiff reports that the use of force was so excessive that other officers yelled at Best to stop or risk losing his job.  (*Id.*)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

26

Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

It is certainly possible that Defendant Best's use of force will prove to have been an appropriate response to the situation; however, based on Plaintiff's allegations—accepted as true—the force used was excessive. Accordingly, Plaintiff has stated an Eighth Amendment claim against Defendant Best.

## Conclusion

This matter is before the Court on several requests for relief from Plaintiff.  Plaintiff has requested leave to proceed *in forma pauperis*.  That request will be granted; however, Plaintiff has already paid the full filing fee.  That portion of Plaintiff's payments in this case that exceed the *in forma pauperis* filing fee of $350 plus any additional copy charges Plaintiff has incurred shall be returned to Plaintiff.  The Court will not consolidate this case with Plaintiff's other actions.

Plaintiff has filed many documents that purport to amend and supplement his complaint.  He has also filed one motion to amend his complaint to add new Defendants.  Plaintiff is entitled to file one amendment as a matter of right.  The amendment/supplement Plaintiff filed on July 17, 2020, (ECF No. 6) will be accepted as Plaintiff's amendment as of right.  Plaintiff's subsequent attempts to amend or supplement filed without permission—and without even requesting permission—will not be considered as part of Plaintiff's complaint, although they will be considered to the extent Plaintiff sought other relief by way of the document he filed.  Plaintiff's motion to amend his complaint to add new Defendants will be denied as futile.  Moreover, Plaintiff's requests for the appointment of counsel, for discovery, and for immediate relief will be denied.

This opinion and the accompanying order resolve all of the motions Plaintiff has filed through December 1, 2020, and ECF No. 59.  With all motions resolved and the content of the pleadings settled, the Court has reviewed Plaintiff's complaint as required by the Prison Litigation Reform Act.  The Court determines that Defendants MacEachern, Weller, and Parish will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's claim against Defendants Bottrell, Ward, and Best for violation of Plaintiff's First Amendment right to access the courts.  Plaintiff's  claims against Defendants Bottrell, Ward, and Best for First Amendment

retaliation and Plaintiff's claim against Defendant Best for the use of excessive force in violation of the Eighth Amendment remain in the case.

      An order consistent with this opinion will be entered.


Dated:   December 2, 2020                /s/ Janet T. Neff
                                                   Janet T. Neff
                                                   United States District Judge